[No. A034733. First Dist., Div. Two. Mar. 10, 1989.]

GERALD P. HECKERT et al., Cross-complainants and Appellants,
v.
DAVID J. MAcDONALD, Cross-defendant and Respondent.

COUNSEL

Patrick C. Mullin, Norman L. Chong and Tarkington, O'Connor & O'Neill for Cross-complainants and Appellants.

Raymond Coates, Thomas E. Mulvihill and Low, Ball & Lynch for Cross-defendant and Respondent.

OPINION

PETERSON, J.—Defendants and cross-complainants Gerald P. Heckert, Claudette E. Heckert, John A. Brooks, Marian J. Brooks, George F. Heckert, and Valerie Heckert (appellants) appeal from the judgment and post-judgment order denying their requests for attorney fees based on the "third party tort" exception to the general rule that each party must pay his own attorney fees. (Code Civ. Proc., § 1021.) In affirming, we will hold that: (1) Sellers of real property, adjudged completely indemnified by their broker against their joint adverse judgment obtained by buyers solely because of the broker's tort, are entitled to recover from broker reasonable attorney fees incurred by sellers in defense of the action leading to such judgment as damages proximately caused by broker's tort; and (2) such attorney fees, so incurred, must be mitigated by the pecuniary value of any special benefit to sellers conferred by broker's tortious conduct.

## PROCEDURAL/FACTUAL BACKGROUND

Appellants purchased a 31-unit apartment building located in the City of San Carlos from David J. MacDonald and others in 1978 for $900,000. MacDonald (broker), a real estate broker and respondent in this appeal, acted as broker on behalf of both the sellers and appellants. Following the sale, appellants retained him as managing agent for the property, a capacity in which he had acted on behalf of himself and the other previous owners since 1974 when they had originally purchased the property. As managing agent, broker was responsible for all aspects of the building's operation and maintenance. Appellants limited their participation to reviewing, every few

months, the operational and financial summaries prepared and maintained by broker. As described by broker, appellants remained "fairly isolated" from the operation of the building.

Appellants sold the building to plaintiffs Miller and Schvaneveldt in 1983 for $1,720,000. The transaction was negotiated exclusively between broker, as appellants' broker and agent, and Peter Frankel, plaintiffs' real estate broker.

A few months after escrow closed, plaintiffs commenced planned renovations. Upon opening the stucco exterior, they discovered extensive dry rot permeating the building's internal wood structure. The building also was found to have basic structural deficiencies that contributed to the dry rot problem by allowing water to leak into the internal wood structure. These problems necessitated unanticipated expenses.

Plaintiffs subsequently instituted this action against appellants and broker for damages, alleging, as here pertinent, intentional misrepresentation, negligent misrepresentation, concealment, and negligent nondisclosure. Plaintiffs further alleged that broker had breached his duty of care as a licensed real estate broker. Appellants and broker in turn cross-complained against Frankel for indemnity.

Appellants also cross-complained against broker seeking indemnity. Appellants alleged that any damages sustained by plaintiffs were proximately caused by the active negligence of broker in his capacity as their agent, and that any liability attributed to them stemmed solely from their relationship to broker and their passive conduct.[1]

Uncontroverted evidence introduced at trial revealed that broker was aware that the apartment building suffered a variety of water related problems during the entire nine years that he managed the property. When the apartment building was purchased in 1974, he knew that water was ponding on certain sections of the roof, and that a city building inspector had noted that the roof had drainage problems. Subsequent to the closing of escrow, broker informed the prior owners by letter that approximately 11 units were experiencing leakage problems during rainstorms. Several long-term tenants, including broker's on-site manager, testified that broker never repaired the leakage into their apartments. Although periodic caulking of certain exterior portions of the building temporarily eased the problems, water intrusion continued and worsened over time.

---

[1] Certain other parties were brought into the action by the various pleadings. These parties, however, are not pertinent to this appeal.

Broker admittedly never informed appellants that water ponded on the roof, or that tenants complained of leaking. Nor would appellants have been able to ascertain the existence of the problems from the records that they periodically reviewed. Although broker knew that water problems could result in dry rot, he considered the ongoing difficulties to be routine maintenance problems.

Broker also failed to inform Frankel of the existence of the drainage and leakage problems, although Frankel asked him several times whether the building had any conditions about which he should know.

Following a 17-day trial, the jury returned a number of special verdicts, including one that exonerated appellants from fault contributing to plaintiffs' "injuries." On these verdicts, the court entered judgment January 27, 1986, which awarded plaintiffs $200,000 against appellants and broker, jointly and severally; gave appellants judgment on their cross-complaint against broker "for complete indemnity against the [$200,000] judgment of plaintiffs"; and denied appellants the attorney fees they sought from broker.

The attorney fees appellants claimed from broker were reduced to $46,172.50 in a hearing on March 28, 1986. At that hearing, appellants, by renewed motion, contended the attorney fees they sought were incurred in defending an action instituted against them solely because of the tortious conduct of broker as their agent. Appellants argued that they were, therefore, entitled to attorney fees as damages based on the "tort of another" exception to the general rule that each party bears the cost of his or her own attorney fees.

The trial court denied the motion. This appeal followed.

## DISCUSSION

■ Appellants' sole contention on appeal is that the trial court erred in refusing to order broker to pay their attorney fees as damages under the "tort of another" doctrine. While we agree that appellants were entitled to receive such attorney fees, we will affirm the lower court. The attorney fees sought by appellants as damages proximately caused by broker's tortious conduct were required to be offset by the "special benefit" conferred upon appellants that resulted therefrom. The record clearly shows such benefit exceeded the attorney fees claimed. The lower court's ruling, correct in law on a theory not expressly enunciated but implicit in its analysis, should be sustained.

■ Generally, each party bears the cost of employing an attorney unless a statute or an agreement between the parties provides otherwise. (Code

Civ. Proc., § 1021; *Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 504 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763]; *Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645].) Pursuant to their inherent equitable powers, the courts have carved out several exceptions to this rule, including one commonly known as the "tort of another" or "third party tort" exception. (*Gray* v. *Don Miller & Associates, Inc., supra,* 35 Cal.3d at p. 505; *Prentice* v. *North Amer. Title Guar. Corp., supra,* 59 Cal.2d at p. 620.) Under this exception, "A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the . . . attorney's fees . . . thereby suffered or incurred." (*Prentice* v. *North Amer. Title Guar. Corp., supra,* 59 Cal.2d at p. 620; accord *Gray* v. *Don Miller & Associates, Inc., supra,* 35 Cal.3d at p. 505; *Pederson* v. *Kennedy* (1982) 128 Cal.App.3d 976, 979 [180 Cal.Rptr. 740]; Rest.2d Torts, § 914, subd. (2).) As explained in *Prentice,* this exception is applicable to situations ". . . where a defendant has wrongfully made it necessary for a plaintiff to sue a third person. [Citations.] In this case we are not dealing with 'the measure and mode of compensation of attorneys' but with *damages* wrongfully caused by defendant's improper actions." (*Prentice* v. *North Amer. Title Guar. Corp., supra,* 59 Cal.2d at p. 621, italics added.) The attorney fees recoverable as damages in such cases are described as "reasonable compensation for attorney's fees incurred." (*Ibid.*)

▓▓▓ Posttrial, the lower court explained its reasons for denying appellants' motion for attorney fees in its memorandum of decision as follows: "Due to the prior, existing at time of trial, and continuing 'incestuous'[*] relationship between the 'sellers' [appellants here] and MacDonald, attorney fees to the 'sellers' are not warranted. Sellers ['] request for attorney fees is denied. [¶] *'[I]ncestuous' is not used in the literal sense. It is figuratively used to describe a relationship different than the more ordinary fiduciary relationship between real estate broker and client. In the present case these parties had a joint interest in holding the property for mutual gain."

From the reporter's transcript of the hearing, we deduce that the trial court was principally concerned by the fact that appellants benefited from broker's tortious conduct by realizing a substantial profit from the sale of the building. Its structural deficiencies were not disclosed by broker to plaintiffs/buyers, thereby resulting in a greater sales price and profit to appellants/sellers than would have been the case had such deficiencies been disclosed.

In initially determining whether appellants are entitled to attorney fees, the focus of inquiry is on whether appellants incurred the fees as "the

natural and proximate consequences" of broker's tortious conduct. (*Prentice* v. *North Amer. Title Guar. Corp., supra,* 59 Cal.2d at p. 621; see *Gray* v. *Don Miller & Associates, Inc., supra,* 35 Cal.3d at p. 507; *Manning* v. *Sifford* (1980) 111 Cal.App.3d 7, 11 [168 Cal.Rptr. 387].)

Here, appellants, relying upon their agent broker, sold the apartment building without suspecting its true condition. As a direct result of broker's negligent failure to disclose to appellants, or to plaintiffs or their agent, the water problems that had been consistently plaguing the building, appellants were compelled to incur attorney fees in order to defend themselves in this lengthy proceeding. (Cf. *Gray* v. *Don Miller & Associates, Inc., supra,* 35 Cal.3d at p. 507; *Howard* v. *Schaniel* (1980) 113 Cal.App.3d 256, 267 [169 Cal.Rptr. 678].)

Broker asserts that the theory behind the recovery of attorney fees under the "tort of another" exception lies in equity; and that, consequently, the decision to award or deny the fees rests in the court's inherent discretionary powers, and may be reversed on appeal only upon a clear showing of abuse.

However, "[t]he theory of recovery [behind the 'third party tort' exception] is that the attorney fees incurred in litigating with the third person are recoverable as damages, like any other damages, in the action against the wrongdoer. [Citations.] In such cases there is no recovery of attorney fees qua attorney fees." (*Austero* v. *Washington National Ins. Co.* (1982) 132 Cal.App.3d 408, 412 [182 Cal.Rptr. 919]; see also *Prentice* v. *North Amer. Title Guar. Corp., supra,* 59 Cal.2d at pp. 620-621; *Pederson* v. *Kennedy, supra,* 128 Cal.App.3d at p. 979; *Roberts* v. *Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104, 112 [128 Cal.Rptr. 901].)

Appellants, receiving "complete indemnity" from broker against plaintiffs' joint and several judgment, accordingly were entitled to recover as damages attorney fees reasonably incurred in defending the lawsuit instituted by the successful plaintiffs.

The trial court implicitly recognized that appellants substantially benefited from broker's tortious conduct by realizing an inflated profit from the sale of the apartment building. The $1,720,000 sale price was in part obtained because of broker's negligent nondisclosures. Since the jury determined that broker's negligence caused plaintiffs to suffer damages in the amount of $200,000 because of the true but undisclosed condition of the apartment building, the reasonable inference on consideration of appellants' request for fees was that the apartment building's purchase price paid to appellants was inflated by a like sum. Thus, while appellants suffered pecuniary damages by incurring attorney fees proximately caused by broker's

tortious conduct, a preponderance of the evidence supported the conclusion that they also obtained a financial benefit in the form of an increased sale price as a result of that same conduct.

The courts in California have long recognized the application of what is commonly known as the "special benefit" doctrine or rule in tort damages. (*Turpin* v. *Sortini* (1982) 31 Cal.3d 220, 236 [182 Cal.Rptr. 337, 643 P.2d 954]; *Maben* v. *Rankin* (1961) 55 Cal.2d 139, 144 [10 Cal.Rptr. 353, 358 P.2d 681]; *Hicks* v. *Drew* (1897) 117 Cal. 305, 314-315 [49 P. 189].) ■ The California rule is as follows: "When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable." (Rest.2d Torts, § 920; *Turpin* v. *Sortini, supra,* 31 Cal.3d at p. 236.)

As has been explained, "The reason [behind the rule] is clear, if tautological: to the extent a plaintiff's interest benefits from negligence, it is not damaged." (*Flowers* v. *District of Columbia* (D.C.App. 1984) 478 A.2d 1073, 1080.) Further, the "special benefit" doctrine reflects the basic compensatory theory underlying tort damages by restricting recovery to the harm actually incurred. (Rest.2d Torts, § 920, com. f; 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1319, pp. 776-777 and cases cited therein.)

■ The "special benefit" doctrine was applicable to this case. Broker's negligence both benefited and harmed appellants' pecuniary interest. The trial court implicitly recognized that appellants' financial interest benefited from the same tortious conduct of broker that caused appellants to incur the attorney fees they seek. Reversal of the lower court's order would inequitably permit appellants to realize a financial windfall from their agent's tortious conduct.

No necessity exists in this case to order remand to the trial court to make an express finding on the value of the "special benefit" appellants received, resulting from broker's tortious conduct, in view of the jury's award to plaintiffs of $200,000 in damages. The lower court could reasonably infer that such sum is the value of that benefit; i.e., that appellants/sellers received $200,000 more from plaintiffs/buyers in the purchase of the apartment building than they would have received had the plaintiffs known its true value and structural condition at the time of sale.

Thus, a preponderance of the evidence available to the trial court supports the conclusion that the pecuniary benefit appellants received, because

of broker's tortious conduct, substantially exceeds their pecuniary damage incurred in attorney fees. ■ The lower court's decision was supported by the evidence, correct in law, and was equitable in the circumstances of this case. Even if the "special benefit" doctrine were not implicit in the lower court's rationale of its decision on an "'incestuous' relationship" between appellants and broker, "'No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' (Citation.)" (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].)

## DISPOSITION

The judgment and the postjudgment order denying appellants' recovery of attorney fees are affirmed.

Kline, P. J., and Benson, J., concurred.