Filed 5/30/24  Wietsma v. Foremost Ins. Co. of Grand Rapids CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| KIMBERLY WIETSMA et al., | C097885 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34201700223969CUBTGDS) |
| v. | |
| FOREMOST INSURANCE COMPANY OF GRAND RAPIDS, MICHIGAN, | |
| Defendant and Appellant. | |

In this insurance bad faith case, defendant Foremost Insurance Company of Grand Rapids, Michigan (Foremost) challenges a trial court's award of attorney fees to prevailing plaintiffs Kimberly Wietsma, Renee Bradford, and Cindy Nugent under *Brandt v. Superior Court* (1985) 37 Cal.3d 813 (*Brandt*).  Foremost contends the trial court erred:  (1) by failing to apply two principles generally applicable to damage claims; (2) by concluding Foremost lacked standing to challenge the conscionability of plaintiffs' fee agreement; and (3) by not rejecting plaintiffs' fee agreement as a manipulation of fees under *Brandt*.

1

We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs purchased an insurance policy from Foremost to cover losses at their rental property. They filed a claim for $84,000, asserting that the property was damaged by unauthorized tenant alterations. Foremost paid plaintiffs an undisputed amount but otherwise denied their claim.

Plaintiffs hired counsel, executing a fee agreement in May 2017 (the 2017 Agreement). The 2017 Agreement specified that counsel would be compensated only if recovery was obtained and, in that event, plaintiffs would pay one of two amounts: (1) 40 percent of the gross recovery if the case was settled before a jury was sworn or (2) 50 percent of the gross recovery after a jury was sworn. The 2017 Agreement also entitled counsel to an attorney fee lien against any potential recovery and to any monetary and " 'cost of proof' " sanctions recovered under various Code of Civil Procedure provisions.

In December 2017, plaintiffs filed a complaint against Foremost for insurance bad faith, seeking general, special, economic, and consequential damages, as well as attorney fees required to recover policy benefits. Plaintiffs disclosed the 2017 Agreement to Foremost during discovery. Over 18 months into the case, Foremost filed a motion for summary adjudication and judgment, which the trial court denied. Then, over one year later, the trial date was continued to September 20, 2021. The month before the new trial date, the presiding judge heard Foremost's motion to bifurcate the trial into a bench trial on certain affirmative defenses followed by a jury trial on the bad faith claim. The presiding judge denied the motion without prejudice to reassertion before the trial judge, finding the trial judge to be in the best position to determine the order of issues.

On September 1, 2021, plaintiffs executed a new fee agreement with counsel that superseded the 2017 Agreement (the 2021 Agreement). The 2021 Agreement still provided fees were contingent on recovery. It also retained counsel entitlement to a lien,

2

to monetary and "cost of proof" sanctions, and to the 40 percent fee for settlement prior to the swearing of a jury. But the 2021 Agreement added a provision requiring payment of an hourly rate if a jury panel was sworn. Plaintiffs' counsel produced the 2021 Agreement to Foremost within two days of its execution.

On September 28, 2021, the trial court heard Foremost's renewed motion to bifurcate the trial. The court granted the motion and issued a briefing schedule for a bench trial on two of Foremost's affirmative defenses. Following the bench trial, the court ruled in plaintiffs' favor in March 2022.

A few months later, the matter proceeded to a jury trial on the bad faith claim. The jury found for plaintiffs and awarded them $131,201.92 in damages, $55,223.64 of which was awarded for policy benefits that Foremost unreasonably failed to pay.

Plaintiffs moved to recover attorney fees and costs pursuant to *Brandt* and their stipulation to resolve any *Brandt* fee request by way of posttrial motion. Plaintiffs claimed that counsel billed over 1,900 hours since May 2017 at rates of $400 or $700 per hour, as provided in the 2021 Agreement, resulting in total fees of $916,250. They sought $606,278 of those fees under *Brandt*. As relevant here, Foremost opposed the motion on the grounds that (1) the 2021 Agreement was an impermissible attempt to manipulate fee recovery under *Brandt*; (2) the 2021 Agreement was unconscionable; and (3) plaintiffs failed to mitigate their damages. As to unconscionability, Foremost argued that plaintiffs would still owe counsel over $100,000 after *Brandt* fees were paid and questioned whether counsel would enforce that debt. According to Foremost, this meant that the 2021 Agreement was a sham and the legal fees under the Agreement were not incurred because plaintiffs were not legally obligated to pay them.

The trial court rejected Foremost's arguments and awarded $384,825 in *Brandt* fees. In its tentative ruling, the court found that the "timing and terms of the 2021 Agreement [were] suspect" but concluded Foremost lacked standing to challenge the conscionability of the agreement. At oral argument, Foremost questioned the tentative

3

ruling, insisting that the 2021 Agreement was an impermissible manipulation of *Brandt* fees and that it had standing to question the 2021 Agreement's conscionability. Making a "couple of other points," Foremost added that the damages under the 2021 Agreement were speculative because it wasn't clear whether the fees would be enforced against plaintiffs given that counsel might not actually enforce the fees or plaintiffs might contest them as unfair.

Before taking the matter under submission, the court indicated its inclination to reject Foremost's fee manipulation argument, remarking that plaintiffs' fee agreement was changed before trial when "there were a lot of contingencies" and "nobody knew what was going to happen." In affirming its tentative ruling, the court reiterated its concern regarding the terms and conditions of the 2021 Agreement, particularly the potential that the terms could place plaintiffs in a worse position than before the litigation commenced. But the court concluded there was no authority allowing Foremost to challenge the agreement or allowing the court to invade the attorney-client relationship and its governing agreement. The court also found no evidence that the 2021 Agreement was drafted as a means to negatively impact Foremost and rejected "any argument that the [2021 Agreement] occurred as an improper attempt to manipulate the *Brandt* fees."

Foremost timely appealed. It contends the court erred in four ways: (1) in awarding speculative damages; (2) in failing to disregard the 2021 Agreement because it violates plaintiffs' obligation to mitigate their damages; (3) in concluding Foremost did not have standing to challenge the conscionability of the 2021 Agreement; and (4) in failing to disregard the 2021 Agreement as a manipulation of *Brandt* fees.

DISCUSSION

I

*Brandt* Fees Generally

Normally, each party to a civil action must bear his or her own legal fees. (Code Civ. Proc., § 1021.) But in limited circumstances, a plaintiff may recover attorney fees as

4

damages.  (*Mai v. HKT Cal., Inc.* (2021) 66 Cal.App.5th 504, 512.)  One such circumstance applies under the doctrine of " 'tort of another.' "  (*Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 505.)  Under this doctrine, " '[a] person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the . . . attorney's fees . . . thereby suffered or incurred.' "  (*Heckert v. MacDonald* (1989) 208 Cal.App.3d 832, 837.)  " 'The attorney fees recoverable as damages in such cases are described as "reasonable compensation for attorney's fees incurred." ' "  (*Ibid.*)

In *Brandt*, the "tort of another" doctrine was extended to permit recovery of attorney fees resulting from an insurer's tortious conduct.  (*Third Eye Blind, Inc. v. Near North Entertainment Ins. Services, LLC* (2005) 127 Cal.App.4th 1311, 1325; see *Brandt, supra*, 37 Cal.3d at p. 817 [likening the case to the "third party tort situation"].)  Specifically, *Brandt* allows an insured to recover attorney fees expended to enforce a policy when the insurer has withheld policy benefits in bad faith.  (*Pulte Home Corp. v. American Safety Indemnity Co.* (2017) 14 Cal.App.5th 1086, 1127 (*Pulte Home*).)  The insured's recovery under *Brandt* is limited to the legal fees attributable to obtaining the contract recovery.  (*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 534.)  Fees incurred in prosecuting the tort cause of action are not recoverable.  (*Ibid.*)  The recoverable fees are commonly referred to as *Brandt* fees and are considered an economic loss proximately caused by the insurer's breach of its duty to deal in good faith.  (*Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252, 1255; *Brandt*, at p. 817.)

To recover *Brandt* fees, the insured must prove the following:  (1) the amount to which he or she was entitled under the policy, (2) that the insurer withheld payment or performance unreasonably, requiring retention of a lawyer to recover benefits due under the policy; (3) the amount the insured paid or incurred in legal fees and expenses in establishing the insured's right to contract benefits; and (4) the reasonableness of the fees

and expenses so incurred.  (*Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1079; see CACI 2350.)  Since the fees are recoverable as damages, the determination of recoverable fees must be made by the trier of fact who must apportion the fees to ensure the insured receives fees for the portion of work devoted only to contract recovery. (*Brandt, supra*, 37 Cal.3d at p. 819; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 811-812 (*Cassim*).)  We must affirm the fee award in the absence of a showing of a clear abuse of discretion.  (*Track Mortgage Group, Inc. v. Crusader Ins. Co.* (2002) 98 Cal.App.4th 857, 868.)

II

Damage Principles

Foremost focuses on the concept of *Brandt* fees as damages and contends that two principles that generally govern damage recovery should apply to a claim for those fees, namely, (1) the principle that damages should not be speculative and (2) the principle that a plaintiff must mitigate his or her damages.  We discuss each of these principles separately below.

A. *Speculative Damages*

Foremost contends the trial court erred by awarding speculative *Brandt* fees because plaintiffs offered no evidence they paid or were reasonably certain to pay any of the attorney fees owed.  In support, Foremost relies on the principle that a damage award must not be " ' "speculative, remote, imaginary, contingent, or merely possible." ' " (*Estate of Kampen* (2011) 201 Cal.App.4th 971, 991.)  Thus, a plaintiff must generally prove that future economic losses are reasonably certain.  (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 738; Civ. Code, §§ 3283, 3301.)

We agree with plaintiffs that Foremost did not properly raise this contention in the trial court.  (See *Howitson v. Evans Hotels, LLC* (2022) 81 Cal.App.5th 475, 489.) Foremost admits that it questioned plaintiffs' obligation to pay their legal fees only in the context of its unconscionability argument.  And in that context, Foremost did not cite any

6

authorities on speculative damages nor did it develop its concern as a speculative damages issue. This was insufficient to raise the issue in the trial court and preserve it for our review. (See *Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 770 [undeveloped argument raised in a "cursory manner" and buried within another argument did not adequately raise the issue in the trial court or preserve the issue for appeal].)

Foremost's attempt to cast its contention as one for sufficiency of evidence also fails to render it reviewable. Whether plaintiffs were required to prove that the *Brandt* fees were reasonably certain under the standards that generally apply to damage claims is a question of law. (See *Board of Education v. Jack M.* (1977) 19 Cal.3d 691, 698, fn. 3 [determination of question of law can only be reached by application of legal principles].) And it is a question of law that, if resolved in Foremost's favor, would require plaintiffs to present additional facts. Thus, we cannot treat the claim as posing a question of law based on noncurable, undisputed evidence. (See *In re Marriage of Priem* (2013) 214 Cal.App.4th 505, 511.)

Even assuming Foremost adequately preserved its contention, we find no merit in it. According to Foremost, when a plaintiff seeks attorney fees as damages in a *Brandt* fee or "tort of another" context, the plaintiff must make a showing that he or she has paid the legal fees accrued or that counsel intends to pursue collection of the fees owed. But Foremost does not provide any authorities applying that standard in those contexts. In fact, the authorities that exist indicate that proof of incurring the debt to the attorney is sufficient. (*Nelson v. Kellogg* (1912) 162 Cal. 621, 623; *Contra Costa County Title Co. v. Waloff* (1960) 184 Cal.App.2d 59, 68 [in a "tort of another" case, the plaintiff's agreement to pay a certain amount of attorney fees for prosecution of the lawsuit was sufficient to allow the trier of fact to conclude that the fees were incurred]; *Tucker v. Kenner* (9th Cir. 2004) 85 Fed.Appx. 610, 613.)

Foremost's reliance on *Green Wood Industrial Co. v. Forceman Internat. Development Group, Inc.* (2007) 156 Cal.App.4th 766, *Pacific Pine Lumber Co. v.*

7

*Western Union Tel. Co.* (1899) 123 Cal.428, and *Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541 is misplaced. According to *Green Wood* and *Pacific Pine*, more certainty is necessary than evidence of a plaintiff's obligation to pay a third party because the obligation alone does not mean that the plaintiff will pay the third party. (*Green Wood,* at p. 778; *Pacific Pine,* at pp. 432-433.) Here plaintiffs' counsel is not equivalent to the third parties considered in *Green Wood* and *Pacific Pine*. Plaintiffs' counsel is plaintiffs' legal representative in this action and counsel's fees were supported by declarations and billing records and subject to scrutiny for reasonableness in rate and hours expended. Nor are plaintiffs akin to the plaintiff in *Howell* who sought to use medical bills as evidence of damage even though the plaintiff's insurer agreed to accept a discounted amount as payment in full. (*Howell*, at p. 549; see *Mai v. HKT Cal, Inc.* (2021) 66 Cal.App.5th 504, 522, fn. 14 [noting that rule for unpaid bills is less certain particularly in idiosyncratic medical context].) Plaintiffs seek payment of legal work devoted only to contract recovery and there is no suggestion that plaintiffs' counsel agreed to accept less for that work. (See also *Sanchez v. Strickland* (2011) 200 Cal.App.4th 758, 769 [gratuitous write-off can be recovered].)

Furthermore, requiring an insured to specifically prove he or she has paid or will be held to pay the accrued fees makes little sense in the *Brandt* scenario. In such a scenario, the plaintiff is trying to prove, in the same case, both the breach of the insured's duty and the fees incurred to prove that breach. (See *Brandt, supra*, 37 Cal.3d at p. 818 ["the fees claimed as damages are incurred in the very lawsuit in which their recovery is sought"].) How would the plaintiff be able to show he or she has paid those fees or will be required to pay them when the fees are typically contingent on prevailing? The fact that the parties often stipulate to have the *Brandt* fees determined by the trial court in a posttrial proceeding (see *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999, 1035, fn. 50 [*Brandt* fees are decided by the jury

8

unless the parties stipulate to a posttrial procedure]) does not justify requiring such a showing.

B.     *Damage Mitigation*

Foremost contends the trial court should have disregarded the 2021 Agreement because plaintiffs' execution of it violated their obligation to mitigate their damages. We disagree.

"The doctrine of mitigation of damages holds that '[a] plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided.' " (*Valle de Oro Bank v. Gamboa* (1994) 26 Cal.App.4th 1686, 1691.) In other words, "[a] plaintiff may not recover for damages avoidable through ordinary care and reasonable exertion." (*Ibid*.) For example, a landowner in a dispute over the contract price of water should avoid loss of his or her crops by reasonably irrigating the land while the dispute is resolved. (*Henrici v. South Feather Land & Water Co.* (1918) 177 Cal. 442, 445-446, 449-450.)

We see no reason to apply the mitigation doctrine to *Brandt* fees as Foremost suggests. Recovery of *Brandt* fees requires the insured to prove, among other things, the amount incurred in legal fees and the reasonableness of those fees. (*Jordan v. Allstate Ins. Co.*, *supra*, 148 Cal.App.4th at p. 1079.) In Foremost's view, the insured must also show it made a reasonable effort to secure the lowest fees in a contingent fee context without knowing whether or how that contingency will bear out. Such a requirement ignores our Supreme Court's recognition in the context of *Brandt* fees that a client can choose to pay more than 100 percent of an anticipated contract recovery in order to obtain that recovery. (*Cassim, supra*, 33 Cal.4th at p. 809.) The key question for purposes of awarding *Brandt* fees is how much it costs to vindicate the insured's contractual rights under an insurance policy. (*Ibid*.)

9

Moreover, even if we applied the mitigation doctrine as Foremost suggests, Foremost's claim would fail under three standards that apply to the mitigation doctrine. First, the defendant bears the burden of proving failure to mitigate. (*Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A.* (2013) 221 Cal.App.4th 867, 884.) Second, the reasonableness of the plaintiff's mitigation efforts must be judged in light of the situation existing at the time rather than with the benefit of hindsight. (*Green v. Smith* (1968) 261 Cal.App.2d 392, 396.) And third, the standard by which the reasonableness of the injured party's efforts is to be measured is not as high as the standard required in other areas of law. (*Id*. at p. 397.) "It is sufficient if [the plaintiff] acts reasonably and with due diligence, in good faith." (*Ibid*.)

Here, Foremost devoted only five sentences to its mitigation argument in opposition to plaintiffs' fee motion and argued that plaintiffs had no reason to agree to the 2021 Agreement that ended up saddling them with fees in excess of their recovery. Foremost's mitigation argument also applies the benefit of hindsight and fails to show that plaintiffs' action in September 2021 was unreasonable. When plaintiffs signed the 2021 Agreement, Foremost had filed a motion to bifurcate the trial into two parts: a bench trial on certain defenses followed by a jury trial on the bad faith claim. The presiding judge hearing that motion denied it but without prejudice to reassertion before the trial judge. Thus, Foremost's characterization of the 2021 Agreement as being executed on the eve of trial is incorrect. The possibility of a jury trial was uncertain and potentially delayed by a separate bench trial that would dispose of plaintiffs' claims. And we cannot consider it unreasonable in those circumstances for plaintiffs to substitute an arrangement giving counsel a 50 percent recovery with an arrangement giving counsel an hourly recovery if a jury was seated.

10

III

The 2021 Fee Agreement

*A.      Conscionability*

In opposition to plaintiffs' fee motion in the trial court, Foremost argued that the 2021 Agreement was unconscionable because:  (1) plaintiffs' counsel sought fees more than 10 times plaintiffs' recovery; (2) the 2021 Agreement gave plaintiffs' counsel all amounts awarded for "cost of proof" sanctions; (3) plaintiffs were unsophisticated clients who were presented with the 2021 Agreement well into the case; and (4) the 2021 Agreement did not explain the nature of the shift in fees or show that plaintiffs gave informed consent to the agreement.  Foremost contends the trial court erred in concluding it lacked standing to make this unconscionability argument.  We disagree.

Standing is a question of law that is reviewed de novo.  (*Sirott v. Superior Court* (2022) 78 Cal.App.5th 371, 380.)  "As a general rule, a third party does not have standing to bring a claim asserting a violation of someone else's rights.  [Citation.]"  (*Brenner v. Universal Health Services of Rancho Springs, Inc.* (2017) 12 Cal.App.5th 589, 605.)  This rule applies equally in the context of contracts.  "[T]he defense of illegality [of a contract] is open to the parties to the contract and to those claiming under them."  (*Kyne v. Kyne* (1940) 16 Cal.2d 436, 439; *Killian v. Millard* (1991) 228 Cal.App.3d 1601, 1605.)

Foremost admits this is the rule and does not contend it qualifies for standing under the rule.  Instead, Foremost contends an exception described in *River Garden Farms, Inc. v. Superior Court* (1972) 26 Cal.App.3d 986, 1000 (*River Garden Farms*) allows a third party whose interests are *affected* by a contract to invoke the contract's illegality.  This contention represents an oversimplification of *River Garden Farms*.

In *River Garden Farms*, the plaintiff reached a settlement with one of several tortfeasor defendants in a personal injury lawsuit.  The non-settling defendants questioned whether the settlement was made in good faith.  (*River Garden Farms, supra*,

11

26 Cal.App.3d at p. 989.) Of particular importance here, the non-settling defendants didn't contend that the settlement agreement was unconscionable as applied to the plaintiff. Instead, they questioned whether the settling parties were manipulating the settlement to leave the non-settling defendants as the "sole target of liability." (*Id.* at p. 991.) The court held that "[w]hen given in bad faith as to a nonsettling tortfeasor, a release is an illegal contract, offensive to the statutory policy of equitable distribution of the loss." (*Id.* at p. 1000.) And when that contract is the product of collusion between the settling parties, those parties are equally at fault and a nonparticipant to the contract whose ultimate liability is affected may argue that the contract was made in bad faith. (*Ibid.*) The court did not hold that the nonparticipant to the contract could make other arguments to undermine it. Thus, at best, *River Garden Farms* supports Foremost's ability to challenge whether the 2021 Fee Agreement was a manipulation of *Brandt* fees, not whether it included unconscionable terms as applied to plaintiffs. We discuss the issue of manipulation of *Brandt* fees separately below.

Foremost also cursorily relies on a federal case from the Fourth Circuit Court of Appeals in which a buyer sued a manufacturer based on a contract to which the buyer was not a party. (*International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH* (4th Cir. 2000) 206 F.3d 411, 413.) Applying equitable estoppel principles, the circuit court held that the manufacturer could use the arbitration clause in the contract to require the buyer to arbitrate its claims. (*Id.* at p. 418.) Under those principles, the buyer could not claim the benefit of the contract without also avoiding the burdens of the contract, such as a term requiring arbitration. (*Ibid.*) But the buyer could then also defend itself from those burdens by claiming they were unfair. (*Id.* at p. 419.) Thus, *International Paper* stands for the principle that a party may be estopped from asserting that lack of his or her signature on a contract precludes enforcement of a provision of the contract when that party has consistently maintained that the other provisions of the contract should be enforced to benefit him or her. *International Paper* did not address

12

standing, and Foremost does not explain how *International Paper* means that Foremost has standing to challenge the conscionability of the 2021 Agreement. We decline to attempt to develop such an explanation on Foremost's behalf. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.) In sum, Foremost fails to meet its burden to affirmatively demonstrate error in the trial court's standing determination. (*Shenouda v. Veterinary Medical Bd.* (2018) 27 Cal.App.5th 500, 512.)

B.      *Manipulation*

Foremost contends the trial court failed to recognize its discretion to disregard the 2021 Agreement as a manipulation of *Brandt* fees. This contention is not supported by the record.

Courts frown on tactics "designed to manipulate the calculation of *Brandt* fees to the plaintiff's benefit" and retain discretion to disregard fee agreements that employ such tactics. (*Cassim, supra,* 33 Cal.4th at p. 813.) According to Foremost, the trial court concluded it lacked discretion to disregard the 2021 Agreement because of Foremost's lack of standing. Foremost is mistaken. The trial court concluded Foremost lacked standing to challenge the conscionability of the 2021 Agreement, but it also considered and rejected the merits of Foremost's challenge to the 2021 Agreement as an improper manipulation of *Brandt* fees. In affirming its tentative ruling awarding fees under the 2021 Agreement, the court expressly stated "its rejection of any argument that the [2021 Agreement] occurred as an improper attempt to manipulate the *Brandt* fees."

Nevertheless, Foremost insists there are indications of manipulation in the 2021 Agreement that are comparable to those found improper in *Pulte Home*. It contends the court abused its discretion by finding no improper manipulation and failed to adequately explain that finding. Again, we disagree.

In *Pulte Home*, the plaintiff originally agreed to pay its attorneys a one-third contingency fee. (*Pulte Home*, *supra*, 14 Cal.App.5th at p. 1129.) After issuing a substantive decision on the plaintiff's entitlement to contract damages and bad faith

13

recovery, the court admitted the original fee agreement into evidence. (*Ibid*.) Then, after the court estimated the plaintiff's contract damages to be $400,000, heard the plaintiff's claim of $680,000 in total attorney fees, and observed this was not a case in which the insured would be recovering large emotional distress damages, the court opted to take the proper *Brandt* fee calculation under submission. (*Id*. at pp. 1129-1130.) The plaintiff then filed declarations about its recent decision to modify the original fee agreement to provide for hourly-based fees. (*Id*. at p. 1130.) Based on the modified fee agreement, the plaintiff claimed $769,101.80 in total fees and sought $645,463.10 in *Brandt* fees. (*Id*. at p. 1130.) Relying on the principle that fee agreements can be changed, the trial court based the *Brandt* fees on the modified agreement. (*Id*. at p. 1131.) The reviewing court disagreed, concluding that the "fee arrangement in effect during trial should have controlled over the recent changes to it." (*Id*. at p. 1132.)

We do not see sufficient similarity between the *Pulte Home* circumstances and those presented here. In *Pulte Home*, the fee agreement was modified after trial and after the court had (1) admitted the original fee agreement into evidence, (2) estimated the plaintiff's contract damages, and (3) heard the plaintiff's *Brandt* fee claim based on the original agreement. Here, plaintiffs modified the agreement before trial and after Foremost indicated it would seek to resolve certain defenses by way of a bench trial before a separate jury trial on the bad faith claim. *Pulte Home* does not suggest there is anything improper when a plaintiff agrees to change a fee agreement during litigation. Instead, *Pulte Home* suggests that impropriety becomes a concern when the plaintiff makes that change post-trial or after receiving indications from the trier of fact as to how much recovery will be obtained. We need not decide when the line between proper and improper modification is crossed as we conclude it was not crossed here. Also, we decline to pursue Foremost's suggestion that insurers should be entitled to rely on the insured's original fee agreement even when a new fee agreement is disclosed shortly after execution. This suggestion questions whether a plaintiff can ever change their fee

14

arrangement before trial. Foremost fails to convince us to venture down that slippery slope. (See *Pulte Home, supra*, 14 Cal.App.5th at p. 1128 ["A contingency fee contract may be modified by the parties at any time during the subject litigation"].) In sum, we conclude the trial court did not abuse its discretion in rejecting Foremost's manipulation arguments.

Finally, contrary to Foremost's position, the trial court adequately explained its rejection. At oral argument on plaintiffs' motion, the trial court noted its skepticism as to whether the idea of *Brandt* fee manipulation really applied here because the fee agreement revisions occurred when "there were a lot of contingencies" and "nobody knew what was going to happen." In affirming its tentative ruling, the court "reiterate[d] its rejection of any argument that the [2021 Agreement] occurred as an improper attempt to manipulate *Brandt* fees." The court's suspicion regarding the timing and terms of the 2021 Agreement was limited to Foremost's unconscionability arguments. (See *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631 [any ambiguity in record is resolved in favor of the appealed judgment].)

DISPOSITION

The judgment is affirmed.  Plaintiffs shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

/s/
MESIWALA, J.

We concur:

/s/
DUARTE, Acting P. J.

/s/
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.